UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KELVIN SCOTT CHESSMAN,
CDCR #G35578,

Plaintiff,

v.

C. PARKHILL, K. SANTANA, M. BURKE, ALONZO, R. ZAVALA, JOHN DOE, Appeals Coordinator, JOHN DOE, K-9 Handler,

Defendants.

Case No.: 3:26-cv-1049-WQH-DDL

**ORDER: (1) DENYING MOTION FOR RELIEF FROM JUDGMENT AS MOOT [ECF No. 7]; AND**

**(2) DISMISSING THE COMPLAINT WITHOUT PREJUDICE FOR FAILURE TO STATE A CLAIM PURSUANT TO 28 U.S.C. § 1915A(b)(1)**

HAYES, Judge:

On February 6, 2026, Kelvin Scott Chessman ("Plaintiff" or "Chessman"), a state inmate proceeding pro se, filed a civil rights complaint under 42 U.S.C. § 1983, along with a motion to proceed in forma pauperis ("IFP"). (ECF Nos. 1, 2.) On February 17, 2026, Plaintiff filed a "supplement" to the complaint, including several exhibits. (ECF Nos. 5, 5-1.)

On February 27, 2026, the Court denied Plaintiff's IFP motion and dismissed the action without prejudice because Plaintiff had sufficient funds available in his prison trust account to satisfy the $405 civil filing fee. (ECF No. 6.) The Court gave Plaintiff 45 days, or until May 16, 2026, to pay the filing fee. *Id.*

On March 31, 2026, Plaintiff filed a "Motion for Relief from Judgment" pursuant to Federal Rule of Civil Procedure 60(b). (ECF No. 7.) On April 2, 2026, Plaintiff paid the $405 civil filing fee. (ECF No. 9.)

For the reasons discussed below, the Court denies the motion for relief from judgment as moot and dismisses the complaint without prejudice, and with leave to amend, for failure to state a claim.

**I. MOTION FOR RELIEF FROM JUDGMENT**

In his motion for relief from judgment, Plaintiff asks the Court to set aside the dismissal of his case because he was in the process of having the civil filing fee sent to the Court. (ECF No. 7 at 2.) The fee was received by the Clerk of Court on April 2, 2026. (ECF No. 9.) The case has been reopened and as such, the motion for relief from judgment is denied as moot.

**II. SCREENING PURSUANT TO 28 U.S.C. § 1915A**

**A. Legal Standard**

Because Plaintiff is a prisoner seeking redress from governmental officers, the Court must screen his complaint pursuant to 28 U.S.C. § 1915A(a) before any of his claims may proceed. Section 1915A(a) "mandates early review— 'before docketing [] or [] as soon as practicable after docketing'—for all complaints 'in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.'" *Chavez v. Robinson*, 817 F.3d 1162, 1168 (9th Cir. 2016). The mandatory screening provisions of § 1915A apply to all prisoners, no matter their fee status, who bring suit against a governmental entity, officer, or employee. *See, e.g. Resnick v. Hayes*, 213 F.3d 443, 446–47 (9th Cir. 2000). "On review, the court shall . . . dismiss the complaint, or any portion of the complaint," if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Olivas v. Nevada ex rel. Dept. of Corr.*, 856 F.3d 1281, 1283 (9th Cir. 2017) (quoting 28 U.S.C. § 1915A(b)).

"The standard for dismissal for prisoner claims at screening is the 'same as the

Federal Rule of Civil Procedure 12(b)(6) standard for failure to state a claim.'" *Long v. Sugai*, 91 F.4th 1331, 1336 (9th Cir. 2024) (quoting *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (citation omitted)). Rule 12(b)(6) requires a complaint to "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (internal quotation marks omitted). A complaint fails to state a claim if it lacks a "cognizable legal theory" or "sufficient facts . . . to support a cognizable legal theory." *Shroyer v. New Cingular Wireless Servs., Inc*., 622 F.3d 1035, 1041 (9th Cir. 2010) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)). Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. While the court has an obligation "where the petitioner is pro se, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt," *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985)), it may not "supply essential elements [to] the claim that were not initially pled." *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir. 1982).

**B. Factual Allegations**

The following facts are taken from allegations contained in Plaintiff's complaint and its supplement. (ECF Nos. 1, 5.) Chessman states that on August 27, 2024 he was inside his cell at Centinela State Prison when correctional officer Parkhill came to his cell door. ECF No. 1 at 4. Parkhill instructed Chessman to exit the cell so it could be searched based on information staff had received. *Id*. Parkhill did not elaborate about the source or content of the "information." *Id.* Parkhill was accompanied by correctional officers Santana, Burke, and "John Doe, K-9 Handler." *Id.* Chessman states the four officers "failed to articulate specific facts giving rise to 'reasonable suspicion'" for the search. *Id.*

After Chessman exited the cell, Parkhill conducted a "pat-down frisk" of Chessman "without any constitutional justification." *Id.* at 5. Burke and K-9 Handler Doe, along with the canine, entered the cell. *Id.* At about the same time, Parkhill instructed Chessman to go

to the showers where Parkhill ordered Chessman to "strip naked and to open [his] mouth, rake from front to back the genitals, show both hands and feet, spread both buttocks while bending over, squat and cough." *Id.* Santana, who was a supervisor, did nothing to prevent the strip search. *Id.*

Thereafter, Parkhill, Burke, and Santana entered Chessman's cell and removed his property, putting it on the walkway outside the cell. *Id.*at 6. Santana began searching the property while the "K-9 dog was air-scan (sniffing) searching" the property. *Id.* at 6. In the meantime, Parkhill and Burke conducted a search inside the cell. *Id.* After the property search was completed with "negative results," Plaintiff was allowed back into his cell. *Id.* Santana then gave Chessman a "cell search worksheet." *Id.*; *see also* ECF No. 5 at 9. Chessman states the worksheet contained "forgery fraudulent wordings" indicating a cell phone and chargers had been found during the cell search. ECF No. 1 at 6; *see also* ECF No. 5 at 10–11. A photograph taken of the items did not show where they were found. ECF No. 1 at 7. Chessman alleges Santana is "responsible for planting evidence." *Id.* at 6.

Plaintiff states that on October 13, 2023 (10 months prior to the search discussed above), he had submitted a complaint regarding "sexual misconduct during a[n] unclothed body search." *Id.* at 7. He alleges the August 27, 2024 search was "staged" and conducted by Parkhill, Burke, Santana and K-9 Handler Doe with "retaliatory state[s] of mind," as a result of the October 13, 2023 staff complaint. *Id.* at 7–8.

After the August 27, 2024 search, Santana prepared a "false" Rule Violation Report ("RVR") which Plaintiff alleges contained several inaccurate statements and was based on "planted evidence." *Id.* at 9. The RVR included allegations that a bag of "beef crumbles" had been previously opened and "retaped" closed to conceal a cellular device. *Id.* at 9. It also noted that a "mackerel fillet" bag had been opened and taped closed to hide two phone chargers. *Id.* at 10. In addition, it referenced finding a USB cord and "charging block" concealed in bottles of seasoning. *Id.*; *see also* ECF No. 5-1 at 13. Chessman states all of this information was "false" and that California Department of Corrections and Rehabilitation ("CDCR") regulations were not followed when inventorying and

photographing the items. ECF No. 1 at 10. Specifically, there were no photographs taken of the items in the location where they were found inside the cell. *Id.*

On September 11, 2024, Lieutenant Alonzo presided over the RVR hearing related to the August 27, 2024 search. *Id.* at 12. Chessman provided a written statement denying the allegations in the RVR and asserting that the officers involved in the search had not followed proper CDCR procedures. *Id.* The hearing, however, was ultimately postponed because Alonzo sought to question witnesses who were unavailable. *Id.* at 13. The RVR hearing was rescheduled for September 13, 2024 and, after hearing from witnesses, considering the evidence and Chessman's objections, Alonzo found Chessman guilty of the RVR. *Id.*; *see also* ECF No. 5-1 at 10–13. As a result, Chessman was assessed a 90-days deduction of custody credits and a 90-day loss-of-privileges. *See* ECF No. 5-1 at 14.

Plaintiff states that on September 19, 2024, he filed a "staff misconduct complaint" against the Parkhill, Burke, Santana and Alonzo, but Defendant "John Doe, Appeals Coordinator" "refus[ed] to process the complaint." ECF No. 1 at 17.

Chessman appealed the result of the RVR hearing and on October 28, 2024, Zavala, the "Chief Disciplinary Officer," affirmed Alonzo's ruling. *Id.* at 15. Plaintiff states Zavala failed to properly consider the evidence and failed to reasonably investigate the matter. *Id.*

**C. Discussion**

Plaintiff names seven Defendants: Parkhill, Santana, Burke, Alonzo, Zavala, John Doe, K-9 Handler ("K-9 Handler Doe") and John Doe, Appeals Coordinator ("Appeals Doe"), all in both their individual and official capacities. *Id.* at 1–3. He raises claims pursuant to 42 U.S.C. § 1983, alleging: (1) the searches conducted by Parkhill, Burke, Santana and K-9 Handler Doe were in violation of his Fourth and Fourteenth Amendment rights, and were "retaliatory;" (2) the RVR prepared by Santana was "false," in violation of his Fourteenth Amendment right to due process; (3) Alonzo found him guilty of the RVR in violation of his right to due process; (4) Zavala affirmed his RVR on appeal in violation of his right to due process; and (5) Appeals Doe failed to properly process his staff misconduct complaint in violation of his right to due process. *See id.* at 5–17. He seeks

money damages and injunctive relief. *Id.* at 21.

To state a claim under § 1983, a plaintiff must plausibly allege "both (1) deprivation of a right secured by the Constitution and laws of the United States, and (2) that the deprivation was committed by a person acting under color of state law." *Tsao v. Desert Palace, Inc.*, 698 F.3d 1128, 1138 (9th Cir. 2012).

### ***1. Official Capacity Claims***

As an initial matter, to the extent Plaintiff sues all Defendants in their official capacities, he fails to state such a claim. An "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity" and as such are treated as claims against the State. *Kentucky v. Graham*, 473 U.S. 159, 166 (1985); *see also Leer v. Murphy*, 844 F.2d 628, 631–32 (9th Cir. 1988) (finding claims against prison correctional officer, warden, and other officials in official capacity to be claims against State). As such, the Eleventh Amendment bars a prisoner's § 1983 claims for money damages against state actors sued in their official capacities. *Michigan State Police Dep't v. Will*, 491 U.S. 58, 66 (1989) ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983."); *see also Dittman v. California*, 191 F.3d 1020, 1025–26 (9th Cir. 1999) ("The State of California has not waived its Eleventh Amendment immunity with respect to claims brought under § 1983 in federal court."). Thus, to the extent Plaintiff is suing Defendants in their official capacities and is seeking monetary damages, the claims are barred by the Eleventh Amendment.

### ***2. Count One***

In count one, Chessman alleges Defendants Parkhill, Santana, Burke and K-9 Handler Doe violated his Fourth Amendment rights when they searched his cell and person without "reasonable suspicion" or "probable cause." ECF No. 1 at 4. He also states that the same Defendants violated his due process rights by failing to follow proper procedure when conducting the cell search, and that they conducted the search with "retaliatory state[s] of mind." *Id.* at 6, 7–8.

/ / /

a. Fourth Amendment

First, as to the search of his cell, Chessman cannot state a Fourth Amendment claim. The Supreme Court has held "the Fourth Amendment proscription against unreasonable searches does not apply within the confines of the prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). As such, prison officials need neither probable cause nor "reasonable suspicion" to conduct a search of a prisoner's cell. *See id.* Therefore, Plaintiff has failed to state a Fourth Amendment claim against Parkhill, Burke, Santana, and K-9 Handler Doe, based on the search of his cell.

Chessman also contends Parkhill violated his Fourth Amendment rights by subjecting him to a visual strip search. (ECF No. 1 at 5.) The Fourth Amendment applies to the invasion of bodily privacy in prisons. *See Bull v. City and Cnty. of San Francisco*, 595 F.3d 964, 974–75 (9th Cir. 2010) (en banc); *Michenfelder v. Sumner*, 860 F.2d 328, 333 (9th Cir. 1988). Prisoners may be subjected to strip searches and body cavity searches if they are conducted in a reasonable manner. See *Bell v. Wolfish*, 441 U.S. 520, 561 (1979). Strip searches that are limited to "visual inspection," even if "invasive and embarrassing," are generally permissible. *See Bull*, 595 F.3d at 974–75 (holding that visual strip searches that are held in a "professional manner and in a place that afforded privacy" and conducted to prevent the smuggling of contraband did not violate Fourth Amendment); *Thompson v. Souza*, 111 F.3d 694, 700 (9th Cir. 1997) (upholding visual strip searches conducted outside prisoner's cell as reasonably related to the legitimate penological interest in keeping contraband out of the prison). A strip search, however, may be unreasonable under the Fourth Amendment where it is "excessive, vindictive, harassing, or unrelated to any legitimate penological interest." *Michenfelder*, 860 F.2d at 332.

Here, Chessman alleges that after the search of his cell began, Parkhill escorted him to the showers and had him undress, expose his genitals and "squat and cough." (ECF No. 1 at 5.) While Chessman alleges that Parkhill lacked justification for the visual strip search, he has failed to plausibly allege facts to suggest it was "excessive, vindictive, harassing" or otherwise unreasonable. *See id.* The search occurred simultaneously with a cell search

for contraband and there are no facts alleged indicating it was overly invasive or unprofessional. *See Bull*, 595 F.3d at 974–75. Therefore, Chessman has failed to state a Fourth Amendment claim against Parkhill based on the visual strip search.

b. Due Process: Failure to Follow Regulations

Next, Chessman appears to allege Parkhill, Santana, Burke and K-9 Handler Doe failed to follow prison regulations when conducting the searches of his cell and person, in violation of his right to due process. (ECF No. 1 at 7.) A purported failure to adhere to certain prison regulations and guidelines does not, without more, establish the violation a federal constitutional right. *See Cousins v. Lockyer*, 568 F.3d 1063, 1070 (9th Cir. 2009) ("[S]tate departmental regulations do not establish a federal constitutional violation."); *Case v. Kitsap County Sheriff's Dep't*, 249 F.3d 921, 930 (9th Cir. 2001) (citations omitted)). Here, Plaintiff has failed to state a due process claim based on a purported failure of any Defendant to follow prison regulations. *See Pettus v. Serrano*, 2022 WL 3574417, at *8 (C.D. Cal. July 1, 2022) (dismissing prisoner's claims that "prison[] policies and procedures regarding 'body and cell searches' were not followed" for failing to state a due process claim pursuant to 28 U.S.C. § 1915A).

c. Retaliation

Chessman alleges Parkhill, Burke, Santana, and K-9 Handler Doe conducted the search with "retaliatory state[s] of mind." (ECF No. 1 at 7–8.) While Chessman does not reference the First Amendment, he appears to allege the search was in retaliation for a previously filed staff complaint. *Id.* at 7. To state a claim for First Amendment retaliation, a plaintiff must allege: "(1) [a]n assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005).

Here, Chessman asserts that Parkhill, Burke, Santana and K-9 Handler Doe conducted the August 27, 2024 search with a "retaliatory mental state" because he had

submitted a staff misconduct complaint on October 13, 2023. (ECF No. 1 at 7–8.) A grievance regarding staff misconduct constitutes protected conduct under the First Amendment. *See Rhodes*, 408 F.3d at 568 (finding the submission of an administrative grievance to be protected conduct). However, Chessman alleges no facts indicating Parkhill, Santana, Burke and/or K-9 Handler Doe were aware of the staff complaint, submitted 10 months prior to the search, or that they conducted the search because of it. Mere speculation that defendants acted out of retaliation is not sufficient. *Wood v. Yordy*, 753 F.3d 899, 904 (9th Cir. 2014) (citing cases) (affirming grant of summary judgment where no evidence that defendants knew about plaintiff's prior lawsuit or that defendants' disparaging remarks were made in reference to prior lawsuit). Therefore, as pleaded, Plaintiff has failed to state a First Amendment retaliation claim against any Defendant.

d. Conclusion

Chessman has failed to state a claim under the Fourth Amendment, Fourteenth Amendment, or First Amendment against any Defendant as to count one. Therefore, the Court dismisses count one in its entirety for failure to state a claim. 28 U.S.C. § 1915A(b); *Iqbal*, 556 U.S. at 678.

***3. Counts Two, Three, and Four***

In the three following counts, Chessman alleges due process violations based on the RVR and subsequent RVR proceedings. In the second count, Chessman alleges Santana prepared a "false RVR" based on "false statements" and "planted evidence," in violation of his due process rights. (ECF No. 1 at 9.) In the third count, Chessman alleges Alonzo, the hearing officer who presided over the RVR hearing, deprived him of due process when he found Chessman guilty of the RVR based on false evidence. *Id.* at 12–13. Plaintiff states that, as a result, he suffered "adverse consequences such as loss of credits, loss of privileges and 10-day confinement to quarters." *Id.* at 13. While Chessman does not specify how many credits he lost in his complaint, exhibits in his supplement indicate he lost 90 days of custody credits. (ECF No. 5-1, Ex. K at 14.) In the fourth count, Chessman alleges Zavala, the chief disciplinary officer, improperly affirmed Alonzo's decision as to the RVR

on appeal, in violation of Chessman's due process rights. *Id.* at 15.

The Due Process Clause of the Fourteenth Amendment protects prisoners from being deprived of life, liberty, or property without due process of law. *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). "A due process claim is cognizable only if there is a recognized liberty or property interest at stake." *Coakley v. Murphy*, 884 F.2d 1218, 1220 (9th Cir. 1989). A liberty interest may arise from the Constitution itself, or from an expectation or interest created by state law or prison regulations. *Sandin v. Conner*, 515 U.S. 472, 484 (1995). With respect to liberty interests arising from state law, the existence of a liberty interest created by prison regulations is determined by focusing on the nature of the deprivation. *Id.* at 481–84. Liberty interests created by prison regulations are limited to freedom from restraint which "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id*. at 484. If a liberty interest is at stake, an inmate is entitled to certain procedural protections. *Id*. at 482.

Because Plaintiff lost custody credits as a result of his disciplinary conviction, his relief under § 1983 is limited by *Heck v. Humphrey*, 512 U.S. 477, 486–87 (1994).[1] State prisoners may not challenge the fact or duration of their confinement in a § 1983 action; their remedy lies in habeas corpus instead. *See Wilkinson v. Dotson*, 544 U.S. 74, 78 (2005). Often referred to as the "favorable termination rule" or the "*Heck* bar," this limitation applies whenever state prisoners "seek to invalidate the duration of their confinement--either *directly* through an injunction compelling speedier release or *indirectly* through a

---

[1] The loss of other general privileges in prison, such as recreational time, visitation, and program participation, generally do not amount to the kind of atypical or significant hardship required to give rise to a state-created a liberty interest. *See Anderson v. Cty. of Kern*, 45 F.3d 1310, 1315 (9th Cir.) (stating hardships "such as loss of recreational and rehabilitative programs or confinement to one's cell for a lengthy period of time" do not give rise to a liberty interest), *opinion amended on denial of reh'g*, 75 F.3d 448 (9th Cir. 1995); *Davis v. Small*, 595 Fed. App'x 689, 691 (9th Cir. 2014) (finding no liberty interest in telephone or yard privileges) (citing *Sandin*, 515 U.S. at 487); *see also Baker v. Lugo*, No. 2:16-cv-3671-PAG-JS, 2017 WL 1428734, at *3 (C.D. Cal. Mar. 21, 2017) (concluding loss of access to yard privileges, dayroom privileges, telephone privileges, and vendor package privileges did not establish existence of state-created liberty interest).

judicial determination that necessarily implies the unlawfulness of the State's custody." *Id*. at 81 (emphasis in original). The Supreme Court has held that where a § 1983 action alleges constitutional violations that would necessarily imply the invalidity of a conviction or sentence, the prisoner must first establish that the underlying sentence or conviction has already been invalidated on appeal, by a habeas petition, or terminated in his favor via some other similar proceeding. *Heck*, 512 U.S. at 486–87 (1994); *see also Muhammad v. Close*, 540 U.S. 749, 751 (2004).

This "favorable termination" rule applies to prison disciplinary proceedings, if those proceedings resulted in the loss of good-time or behavior credits. *Edwards v. Balisok*, 520 U.S. 641, 646–48 (1997) (holding that claim for monetary and declaratory relief challenging validity of procedures used to deprive prisoner of good-time credits is not cognizable under § 1983); *see also Wilkinson*, 544 U.S. at 81–82 (explaining that where "success in a . . . [section] 1983 damages action would implicitly question the validity of conviction or duration of sentence, the litigant must first achieve favorable termination of his available state, or federal habeas, opportunities to challenge the underlying conviction or sentence"). Thus, such a due process claim would be barred unless the plaintiff can also show his disciplinary conviction has been reversed, expunged, or otherwise invalidated. *Heck*, 512 U.S. at 486–87; *Edwards*, 520 U.S. at 648.

Here, Plaintiff alleges his right to due process was violated by Santana's issuance of the RVR, Alonzo's finding him guilty after the RVR hearing, and Zavala affirming the finding on appeal because they were all based on "false" evidence. As a result, he lost 90 days of custody credits and other privileges. (ECF No. 1 at 9, 13–14, 16.) If Chessman were to succeed on these claims, it would "necessarily imply the invalidity of the deprivation of his [custody] credits." *See Edwards*, 520 U.S. at 646. Because Chessman has not further alleged his disciplinary conviction has already been reversed, expunged, or otherwise invalidated, he does not state a plausible claim for relief, and his due process claims related to the "false" RVR itself, the subsequent RVR hearing and the RVR appeal

must be dismissed.[2] *Id.*; *see also Coley v. Duffy*, No. 1:13-cv-00912-BAM-PC, 2016 WL 1359799, at *6 (E.D. Cal. Apr. 5, 2016) (dismissing prisoner's § 1983 complaint alleging loss of custody credits and of being falsely charged with a disciplinary violation pursuant to 28 U.S.C. § 1915(e)(2) and § 1915A as barred by *Heck*). Accordingly, the Court dismisses counts two, three and four for failure to state a claim. *See* 28 U.S.C. § 1915A(b); *Iqbal*, 556 U.S. at 678.

#### 4. Count Five

In his fifth ground for relief, Chessman alleges Defendant Appeals Doe failed to properly process his "staff misconduct complaint," in violation of his right to due process. (ECF No. 1 at 17.) As discussed above, "[t]he Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Prisoners do not have a "separate constitutional entitlement to a specific prison grievance procedure." *Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (citation omitted); *Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988) (stating due process was not violated simply because a defendant fails properly to process grievances submitted for consideration); *see also Todd v. Cal. Dep't of Corr. and Rehab.*, 615 Fed. App'x 415, 415 (9th Cir. 2015) (concluding the district court properly dismissed claim based on improper "processing and handling of [...] prison grievances," since prisoners have no "constitutional entitlement to a specific prison

[2] In addition, courts have generally found that the issuance of a false disciplinary charge does not, in and of itself, violate due process. *See Smith v. Albee*, No. 15-cv-1598 KJN P, 2016 WL 6094471, at *4 (E.D. Cal. Oct. 18, 2016) (stating the "falsification of disciplinary reports does not state a stand-alone constitutional claim," because "[t]here is no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest; *Muhammad v. Rubia*, 2010 WL 1260425, at *3 (N.D. Cal., Mar. 29, 2010), *aff'd*, 453 Fed. App'x 751 (9th Cir. 2011) ("[A] prisoner has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest." (citations omitted)); *Cf. Garrott v. Glebe*, 600 Fed. App'x 540, 545 (9th Cir. April 22, 2015) (stating there is no clearly established federal law that "a prisoner has a right to be free from false accusations").

grievance procedure") (citing *Ramirez*, 334 F.3d at 860) (quotation marks omitted); *Daniels v. Aguilera*, No. 2:16-cv-00996-JAM-CKD P, 2018 WL 558658, at *1 (E.D. Cal. Jan. 24, 2018), *report and recommendation adopted sub nom.* 2018 WL 1763311 (E.D. Cal. Apr. 12, 2018) ("Because there is no right to any particular grievance process, it is impossible for due process to have been violated by ignoring or failing to properly process prison grievances."). Accordingly, Chessman has failed to state a plausible due process claim against Defendant Appeals Doe and therefore the Court dismisses count five. *See* 28 U.S.C. § 1915A(b); *Iqbal*, 556 U.S. at 678.

### D. Leave to Amend

Because Plaintiff is proceeding *pro se*, the Court grants him leave to amend his complaint. *Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) ("A district court should not dismiss a pro se complaint without leave to amend [pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii)] unless 'it is absolutely clear that the deficiencies of the complaint could not be cured by amendment.'") (quoting *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012)).

## III. CONCLUSION

IT IS HEREBY ORDERED that the Court:

1. **DENIES** Plaintiff's Motion for Relief from Judgment (ECF No. 7) as moot.

2. **DISMISSES** the Complaint in its entirety for failure to state a claim against any Defendant, pursuant to 28 U.S.C. § 1915A(b).

3. **GRANTS** Plaintiff **sixty (60)** days leave from the date of this Order in which to file a First Amended Complaint which cures the deficiencies of pleading noted in this Order. Plaintiff's Amended Complaint must be complete by itself without reference to his original Complaint. *See* S.D. Cal. CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled.").

If Plaintiff fails to timely file a First Amended Complaint, the Court will enter a final Order dismissing this civil action based both on failure to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) and § 1915A(b)(1), and failure to prosecute in compliance with a court order requiring amendment. *See Lira v. Herrera*, 427 F.3d 1164, 1169 (9th Cir. 2005) ("If a plaintiff does not take advantage of the opportunity to fix his complaint, a district court may convert the dismissal of the complaint into dismissal of the entire action.").

Dated: August 7, 2026

William Q. Hayes

Hon. William Q. Hayes
United States District Court